BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTI-DISTRICT LITIGATION

| | |
|---|---|
| In re: First American Financial Corporation Data Breach Litigation | MDL No. |

**AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION BY PLAINTIFFS ANTONIO AND KATHLEEN BARAJAS FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Antonio and Kathleen Barajas ("Plaintiffs") respectfully submits this Memorandum of Law in Support of their Motion for Transfer and Centralization of all currently filed federal cases ("Actions") arising out of the subject Data Breach, and any subsequent "tag along" cases involving similar claims.  Plaintiffs seek transfer of all such Actions to the Southern Division of the Central District of California, before the Honorable Andrew J. Guilford.

**I.      INTRODUCTION**

This litigation involves a data breach announced on or around May 24, 2019 (the "Data Breach").  The plaintiffs in these related Actions allege that Defendants First American Financial Corporation, First American Title Company, and/or First American Title Insurance Company (collectively, "Defendants") failed to protect the confidential information of millions of consumers nationwide — including their names, bank account numbers, bank account statements, mortgage records, tax records, Social Security numbers, wire transaction receipts, drivers' license images, and other personal financial information (collectively, their "Personal Information").

On or about May 24, 2019, it was revealed that Defendants had failed to protect Personal Identifying Information ("PII") for their customers and for others involved in transactions with Defendants' customers, which resulted in the exposure of approximately 885 million records related to mortgage deals dating back 16 years. Many of the exposed files are records of wire transactions with bank account numbers and other PII from property buyers and sellers. Defendants have admitted that "a design defect in an application [ ] made possible unauthorized access to customer data." Defendants' website allowed anyone with a computer to access approximately 885 million unencrypted records without any authentication or passwords. The only action required to exploit the vulnerability in Defendants' website was the tweak of a single digit in a URL address. No password or other login credentials were required to access all of Defendants' customers' files and PII.

Each of the Actions is a putative class action, and each seeks a national class and/or alternatively seeks a statewide class. *See Gritz v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01009-DSF-E (C.D. Cal.), Complaint ¶ 50; *Shakib v. First American Financial Corporation,* Case No. 8:19-cv-01022-DSF-E (C.D. Cal.), Complaint ¶¶ 61-62; *Willis v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01023-DSF-E (C.D. Cal.), Complaint ¶ 58; *Bahnmaier v. First American Financial Corporation,* Case No. 8:19-cv-01040-DSF-E (C.D. Cal.), Complaint ¶¶ 61-62; *Toppings Path Holding, LLC v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01051-DSF-E (C.D. Cal.), Complaint ¶¶ 28-29; *Barajas v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01078-AG-DFM (C.D. Cal.), Complaint ¶ 46; *Mohr v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01102-JVS-DFM (C.D. Cal.), Complaint ¶¶ 45-46; *Dinh v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01105-AG-DFM (C.D. Cal.), Complaint ¶ 58; *Brent & Teri Johnson, LLC*

*v. First American Financial Corporation, et al.,* Case No. 2:19-cv-04869 (C.D. Cal.), Complaint ¶ 41; *Resendiz v. First American Financial Corporation, et al.,* Case No. 8:19-cv-01137-JVS-DFM (C.D. Cal.), Complaint ¶ 50; *Sindaghatta v. First American Financial Corporation, et al.,* Case No. 3:19-cv-01083-BEN-RBB (S.D. Cal.), Complaint ¶ 50; *Wooward v. First American Financial Corporation, et al.*, Case No. 8:19-cv-01156-JLS-KES (C.D. Cal), Complaint ¶¶ 42-43; *Forney et al. v. First American Financial Corporation et al.*, Case No. 8:19-cv-01180 (C.D. Cal.), Complaint ¶ 66; and *Kuntz v. First American Financial Corporation,* Case No. 2:19-cv-11749 (E.D. Mich.), Complaint ¶¶ 61-62. As previously discussed, each action alleges a common failure to protect plaintiffs' PII resulting in the Data Breach announced by Defendants on or around May 24, 2019.

Plaintiffs currently are not aware of any related cases other than those identified above. But given the scope of the announced Data Breach, Plaintiffs anticipate additional cases will be filed nationwide.  All existing Actions are in their infancy.  None of the Defendants have answered any Complaint or otherwise appeared in any of the Actions.

Based on the numerous common questions of fact involved in the Actions, the compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and because the most logical and convenient location for these proceedings is the Central District of California, Plaintiffs respectfully request coordinated proceedings there. Moreover, because Defendants are all headquartered in Santa Ana, California, which is within the Southern Division of the Central District, the Southern Division represents the appropriate intra-district venue under the District's local rules.

## II.   BACKGROUND

This motion for transfer involves 14 Actions pending in three different federal Districts[1] asserting common factual allegations and involving overlapping claims, classes, and legal issues concerning the Data Breach. Based on the extensive press coverage of the Data Breach, Plaintiffs expect additional actions to be filed in the federal courts alleging similar claims, on behalf of similar classes.

### A.   Plaintiffs

All plaintiffs in the pending Actions have filed civil actions arising from Defendants' recent disclosure of the massive Data Breach, which resulted in the exposure of approximately 885 million records related to mortgage deals dating back 16 years. The Actions are pursued on behalf of all persons whose PII was compromised in the Data Breach.

Each of these pending federal cases presents a common core of facts, in that: (i) each alleges that plaintiffs' PII was disclosed due to Defendants' malfeasance; (ii) each asserts injury and damages arising from Defendants' wrongful conduct; and (iii) each alleges the same or similar conduct by Defendants. Indeed, the factual allegations in plaintiffs' complaints are nearly identical in many critical respects.

### B.   Defendants

Defendant First American Financial Corporation is a Delaware corporation with its headquarters and principal place of business in Santa Ana, California. Defendant First American Title Company is a California corporation with its principal place of business in Santa Ana, California. Defendant First American Title Insurance Company is a Nebraska corporation with its principal place of business in Santa Ana, California.

---

[1] *See* Schedule of Actions, attached, for a complete listing of the Actions.

C. **Status of the Actions**

The Actions are pending in the Central District of California, the Southern District of California, and the Eastern District of Michigan. All were filed shortly after Defendants' announcement of the Data Breach. Given that all the Actions are in their infancy, none of the plaintiffs have conducted discovery, and none have had an opportunity yet to move the matters towards trial. These Actions are in the earliest procedural stage—no Defendant has answered or otherwise appeared—and, accordingly, it is an appropriate and convenient time to coordinate the Actions.

**III. ARGUMENT**

The Actions listed in the attached Schedule of Actions name First American Financial Corporation, First American Title Company, and First American Title Insurance Company as the only three Defendants. There is substantial overlap between the causes of action: Each case includes causes of action for: negligence; breach of express and/or implied contract; violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. Some cases additionally include violations of other state consumer protection laws, unjust enrichment, and invasion of privacy claims. The Actions all involve common issues of fact and a common Data Breach, such that centralization will promote the convenience of the parties and witnesses, and the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407. Transfer and centralization will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote judicial economy by providing a single forum to which future tag-along actions can be transferred. Accordingly, Plaintiffs respectfully move this Panel for transfer to the Central District of California, the most favorable district for centralization, before Judge Guilford, a capable and experienced jurist of the highest caliber.

### A. These Actions and any Tag-Along Actions Are Appropriate for Transfer and Centralization Under 28 U.S.C. § 1407(A)

Transfer and centralization is permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation*, § 20.131 (4th ed. 2004). Transfer and centralization for pretrial proceedings would achieve those objectives in the instant litigation and therefore is appropriate here.

#### i. The Actions Involve Common, Numerous, and Complex Questions of Fact

The first element of the Section 1407 transfer analysis is whether there are one or more common questions of fact. *See* 28 U.S.C. § 1407. The statute, however, does not require a "complete identity or even [a] majority" of common questions of fact to justify transfer. *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004).

Here, there is no question that these cases share a common core of operative factual allegations concerning the Data Breach affecting customers nationwide. The Actions are based upon facts concerning the same conduct by three affiliated Defendants. The factual questions common to the actions are numerous and complex, including:

- Whether Defendants failed to adequately safeguard the plaintiffs' and the putative classes' PII, and whether Defendants' notification of the 16-year data leak was timely;

- Whether Defendants failed to protect or otherwise keep the plaintiffs' and the putative classes' PII confidential;

- Whether Defendants' storage of the plaintiffs' and the putative classes' PII violated federal, state and local laws, or industry standards;

6

- Whether Defendants engaged in unfair or deceptive practices by failing to properly safeguard the plaintiffs' and the putative classes' PII as promised; and,

- Whether the plaintiffs and putative class members are entitled to damages as a result of Defendants' conduct.

In addition, the Actions rely upon similar legal theories of recovery. These theories include: negligence; breach of express and/or implied contract; violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; violations of other state consumer protection laws, unjust enrichment, and invasion of privacy claims. As the Panel has stated, "the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core …" *In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). As there are numerous common issues of fact exist among these Actions, the pending actions clearly satisfy the first element of the transfer analysis under Section 1407.

### ii. MDL Transfer and Centralization Will Further the Convenience of the Parties and the Witnesses.

Resolution of these common issues in a single forum would further the convenience of all parties and witnesses. *See* 28 U.S.C. § 1407(a). As all of the Actions involve similar allegations and factual questions, the plaintiffs in the Actions will require depositions of the same persons and discovery of the same documents. Defendants likely will raise the same discovery objections and seek the same protective orders or privileges in each case. Absent centralization and transfer, all parties will be subjected to duplicative discovery and witnesses will face multiple, redundant depositions. *See, e.g.*, *In re Pilot Flying J Fuel Rebate Contract Litig. (No. 11)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [the defendant's] officers and employees and duplicative document discovery

regarding the alleged scheme"); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("[Plaintiffs] will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their . . . allegations.  The benefits of having a single judge supervise this pretrial activity are obvious.").

Absent transfer, the federal court system will be forced to administer—and Defendants will be compelled to defend—these related actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements.  Moreover, each plaintiff will be required to monitor and possibly participate in each of the other similar actions to ensure that Defendants do not provide inconsistent or misleading information.  Many of the same pretrial disputes are likely to arise in each action.  Likewise, due to the similar causes of action in each complaint, Defendants will likely assert the same defenses as well as file motions to dismiss and summary judgment on the same claims based on the same arguments in each action.

None of the pending cases have progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding.  This Panel has routinely recognized that consolidating litigation in one court benefits *both* plaintiffs and defendants.  For example, pretrial transfer would reduce discovery delays and costs for plaintiffs, and permit plaintiffs' counsel to coordinate their efforts and share the pretrial workload.  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 173 F. Supp. 2d 1377, 1379 (2001) ("And it is most logical to assume that prudent counsel will combine their forces and apportion their workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned."); *In re Baldwin-United Corp. Litigation,* 581 F. Supp. 739, 741 (J.P.M.L. 1984) (same).  As for

Defendants, national or "generic" expert depositions will be coordinated, document production will be centralized, and travel for its current and former employees will be minimized because it will have to appear only in one location rather than multiple districts around the country. This convenience is enhanced if the Actions are transferred to the three Defendants' principal place of business in Santa Ana, California (the Southern Division of the Central District).

While Plaintiffs anticipate there will be additional similar actions filed, even the current Actions—currently 14 in number—would benefit from transfer and coordinated proceedings, given the overlapping allegations of the subject complaints. *See In re First Nat'l Collection Bureau, Inc., Tel. Consumer Prof. Act (TCPA) Litig.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("Although there are relatively few parties and actions at present, efficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re: Zurn Pex Plumbing Products Liability Litig.*, 572 F.Supp.2d 1380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation of three cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations that will likely require duplicative discovery and motion practice).

Importantly, transfer will reduce the burden on the parties by allowing more efficient and centralized divisions of workload among the attorneys already involved in this litigation, as well as those who join later. The plaintiffs themselves will reap efficiencies from dividing up the management and conduct of the litigation as part of a unified MDL process through a plaintiffs' steering committee or similar mechanism, instead of each plaintiffs' firm separately litigating its own cases on distinct and parallel tracks. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d at 1379; *In re Tylenol Mktg., Sales Pracs. and Prods. Liab.*

*Litig.*, 936 F. Supp. 2d at 1379 ("Centralization will … conserve the resources of the parties, their counsel, and the judiciary.").

In sum, transfer of these actions would serve the convenience of the parties and eliminate duplicative discovery, saving the parties and the courts significant time, effort, and money.

### B. Transfer and Centralization Will Promote the Just and Efficient Conduct of These Actions

Centralization is necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Actions. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d at 1383 ("Centralization will . . . avoid inconsistent pretrial rulings (including on issues of class certification and *Daubert* motion practice) …").

The prospect of inconsistent rulings also encourages forum and judge shopping (including, for example, manipulation of non-congruent discovery limits, approaches to electronically stored information, and protective order issues). By contrast, a single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases at once will help reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimizing this potential for conflicting rulings. *In re: Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) ("Issues concerning the development, manufacture, regulatory approval, labeling, and marketing of Xarelto thus are common to all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary."); *In re Tylenol Mktg., Sales Pracs. and Prods. Liab. Litig.*, 936 F. Supp. 2d

at 1379 ("Centralization will ... prevent inconsistent pretrial rulings (on Daubert issues and other matters).").

Centralization will mitigate these problems by enabling a single judge to manage discovery and by allowing the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mktg., Sales Practices and Products Liability Litig.*, 109 F. Supp. 3d at 1383 ("Centralization will . . . conserve the resources of the parties, their counsel and the judiciary.").

Centralizing these actions under Section 1407 will ensure streamlined resolution of this litigation to the overall benefit of the parties and the judiciary. *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases "[b]ecause of the presence of complex factual questions and the strong likelihood that discovery concerning these questions will be both complicated and time-consuming, we rule that transfer under Section 1407 is appropriate at the present time even though only three actions are presently involved").

Accordingly, transfer to a single district court is appropriate for the just and efficient resolution of these cases.

### C. The Southern Division of the Central District of California Is the Optimal Transferee Forum, and Judge Guilford the Ideal Transferee Judge

Plaintiffs respectfully submit that the Central District of California, and the Southern Division in particular, presents the optimum forum for centralization, and that Judge Guilford is

the ideal transferee judge.

In choosing an appropriate transferee forum, this Panel considers: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; and (6) the experience, skill, and caseloads of available judges. *Manual for Complex Litigation*, § 20.132 (4th ed. 2004). While several of these criteria are not yet implicated due to the infancy of the Actions, the Central District of California presents the most appropriate forum for the transfer and centralization of these Actions. The judiciary in the Central District of California is experienced in overseeing multidistrict litigation.[2] In particular, the Honorable Judge Guilford is currently overseeing an MDL. *See IN RE: Wells Fargo Auto Insurance Marketing and Sales Practices Litigation*, MDL No. 2797. Additionally, the Central District of California is where 12 of the 14 pending Actions were filed, and is it where Defendants are headquartered.

The first factor favors the Central District of California, given that is where 12 of the 14 Actions are pending. The second and third factors are not relevant here because discovery has not yet occurred in any case, and none of the Defendants has answered the Complaints or otherwise appeared.

As to the fourth factor, Defendants are all headquartered in Santa Ana, California, which is within the Southern Division of the Central District. Thus, under that District's local rules, the Southern Division represents the appropriate intra-district venue. *See* C.D. Cal. General Order 19-03 at 10-11.

---

[2] *See e.g.*, *IN RE: Vizio, Inc., Consumer Privacy Litigation*, MDL No. 2693, overseen by the Judge Josephine L. Staton*;* and *IN RE: Toyota Motor Corp., Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2151, overseen by Judge James V. Selna.

12

The Data Breach at issue occurred when Defendants' systems and networks were affected. Defendants' website allowed anyone with a computer to access approximately 885 million records without asking for any authentication. While the relevant services are provided throughout the United States, so no one specific location is the dominant site of all common facts, the fact that the Data Breach occurred on Defendants' systems argues forcefully for Santa Ana being the dominant site of the most relevant occurrence.

The fifth factor favors the Central District of California given that Defendants are headquartered there, which is likely where the most important witnesses and evidence will be located. It is worth noting that although there are several Actions pending in Los Angeles (the Western Division of the Central District), Santa Ana is approximately 60 minutes by car from downtown Los Angeles and it is serviced by its own international airport, which is 11 minutes from Santa Ana's town center. The Defendants' headquarters are a 13-minute drive from the Ronald Reagan Federal Building and U.S. Courthouse in Santa Ana. Traveler accommodations in Santa Ana are abundant.

The sixth factor favors Judge Guilford, who is an experienced and capable judge who currently already presides over one MDL, *IN RE: Wells Fargo Auto Insurance Marketing and Sales Practices Litigation*, MDL No. 2797. Judge Guilford is equipped to handle this matter given his experience handling a similar MDL involving issues as present in this action. *See In re: Experian/T-Mobile Customer Data Security Breach Litigation*, MDL. 2676. In sum, Judge Guilford is an experienced transferee judge who will steer this litigation on a prudent course.

When considered together, these factors support transfer and centralization in the Southern Division of the Central District of California.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion be granted and that the Panel order transfer of the Actions listed in the attached Schedule of Actions, plus any future tag-along actions, to the Central District of California, before Judge Andrew J. Guilford, or to another experienced jurist in the Southern Division, for consolidated pretrial proceedings in accordance with 28 U.S.C. § 1407.

Respectfully submitted,

Dated:  June 14, 2019              **KAZEROUNI LAW GROUP, APC**

/s/   Abbas Kazerounian
Abbas Kazerounian, Esq.
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Phone: 800-400-6808
Fax: 800-520-5523
Email: ak@kazlg.com

*Counsel for Plaintiffs,*
*Antonio and Kathleen Barajas*
*and the putative class*